IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE BOOKER, #B-61837, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 16-cv-00194-SMY ) |
| LESLIE McCARTY, JOHN R. BALDWIN, KIMBERLY BUTLER, JEANETTE COWAN, WILLIAM SPILLER, and JOHN DOE #1 -#131, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This civil rights action arises out of the denial of Plaintiff Willie Booker's request for protective custody at Menard Correctional Center ("Menard") in November 2015. (Doc. 7). Plaintiff[1] is a convicted sex offender who is serving a 36-year sentence for first degree murder and a 22-year sentence for aggravated battery with a firearm. Since December 2014, he has received numerous written and verbal threats from unknown inmates, who promise to kill him if his "sex offender ass" returns to the general population. (*Id*. at 3). Because of these threats, Plaintiff has requested protective custody on numerous occasions. Each request has been denied.

---

[1] Plaintiff is also a "three-striker." *See* 28 U.S.C. § 1915(g). Prior to filing this action, Plaintiff incurred three "strikes" by filing suits that were dismissed as frivolous or for failure to state a claim upon which relief may be granted. *See Booker v. City of Rdfd., IL*, Case No. 03-cv-50066 (N.D. Ill., dismissed March 27, 2003); *Booker v. Mitchell*, Case No. 10-cv-00312 (S.D. Ill., dismissed November 5, 2010); *Booker v. O'Conner*, Case No. 15-cv-50052 (N.D. Ill., dismissed April 14, 2015). Section 1915(g) bars Plaintiff from proceeding *in forma pauperis* ("IFP") unless he is in "imminent danger of serious physical injury." *Id*. The Central District of Illinois granted his IFP Motion, presumably because he satisfied this standard.

Page **1** of **16**

Plaintiff now brings this civil rights action pursuant to 42 U.S.C. § 1983 against the officials who denied his request for protective custody in November 2015.  He names the following individuals as defendants: John Baldwin (Illinois Department of Corrections ("IDOC") director), Leslie McCarty (Administrative Review Board ("ARB") chairperson), Kimberly Butler (warden), Jeanette Cowan (clinical services), an unknown officer ("John Doe #1"), and William Spiller (intelligence unit officer).  Plaintiff claims that these defendants denied his request for protective custody without sufficient evidence or a written summary of their reasons.  He now sues them for conspiring to violate his Eighth and Fourteenth Amendment rights and for emotional distress.  (Doc. 1-1 at 17-18).  Plaintiff seeks monetary damages, declaratory judgment, and injunctive relief.  He also requests a preliminary injunction that requires Menard officials to place him in protective custody.

This is not the first time that Plaintiff has challenged a decision denying his request for protective custody at Menard.[2]  Last year, he filed a related action against Warden Butler, Bryan Gleckler, and Terri Anderson.  *See Booker v. Gleckler, et al.*, Case No. 15-cv-00657-SMY-PMF (S.D. Ill. 2015) ("related action").  The related action is currently pending before this Court.  In it, Plaintiff challenges the denial of his *prior* requests for protective placement at Menard under the Eighth Amendment, Fourteenth Amendment, and Illinois state law.  In addition to his request for monetary damages, Plaintiff also seeks placement in protective custody for the same reasons he now seeks it in this action.

---

[2] Plaintiff originally filed both actions in other federal judicial districts.  The related action was transferred to this District from the Northern District of Illinois on June 11, 2015.  *See Booker v. Gleckler, et al.*, Case No. 15-cv-4965 (N.D. Ill. 2015).  The instant action was transferred from the Central District of Illinois on February 23, 2016.  *Booker v. McCarty, et al.*, Case No. 16-cv-3018 (C.D. Ill. 2016).  Because of the substantial overlap between the cases, both matters have been assigned to the undersigned Judge and will also be referred to the same United States Magistrate Judge for handling.

The First Amended Complaint (Doc. 7) is now before this Court for preliminary review. Plaintiff filed this action in the Central District of Illinois on January 22, 2016. *Booker v. McCarty, et al.*, Case No. 16-cv-03018 (C.D. Ill. 2016). The case was transferred to this District on February 23, 2016. Before it was transferred, Plaintiff filed an "Amended Class Action Complaint"[3] ("First Amended Complaint") (Doc. 7) on February 5, 2016. The First Amended Complaint supersedes and replaces the original Complaint (Doc. 1), rendering the original void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint is the subject of this preliminary screening order.

Under 28 U.S.C. § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). When doing so, the Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The First Amended Complaint survives preliminary review under this standard.

---

[3] Plaintiff attempts to bring a class action on behalf of all inmates who have been denied protective custody in the IDOC since December 2014. Plaintiff names 130 unknown ("John Does ##2-131") high-ranking IDOC officials as defendants. It is not necessary to address the issue of class certification at this time because no motion for class certification is pending. Had Plaintiff filed one, it would be subject to denial because a prisoner bringing a *pro se* action cannot represent a class of plaintiffs. *See Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) (holding it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action). The Federal Rules permit class actions to be maintained only if the class representative (in this case the *pro se* Mr. Booker) "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Lee v. Gardinez,* No. 11–cv–570–GPM, 2012 WL 143612, at *1 n. 1 (S.D. Ill., Jan. 18, 2012) (quoting *Craig v. Cohn,* 80 F. Supp. 2d 944, 946 (N.D. Ind. 2000) (internal citations and quotation marks omitted)). This does not prevent the Court from screening this case pursuant to 28 U.S.C. § 1915A. *See Hall v. Brown,* Civil No. 10–724–GPM, 2011 WL 1403036, at *1 n. 1 (S.D. Ill., Apr. 13, 2011) (quoting *Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 616 (7th Cir. 2002)) ("[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiff[ ]."). Because John Does ##2-131 are only named in connection with the class action claim(s), this screening order omits all further reference to these defendants.

### First Amended Complaint

Plaintiff alleges that he is a convicted sex offender and former member of a gang known as the Gangster Disciples. (Doc. 7). He has been diagnosed with paranoid schizophrenia and anxiety. Given this combination of factors, it is difficult and even dangerous for Plaintiff to live in Menard's general prison population. For his safety and the safety of other inmates, Plaintiff has repeatedly requested protective custody.

Plaintiff maintains that Menard's violent prison population and perpetual overcrowding render protective placement impossible for most inmates. Menard is a maximum security prison that houses 3,800 inmates. (*Id*. at 8). It is allegedly considered the most violent prison in the State of Illinois. As of January 22, 2016, only twenty-one cells at the prison were used for protective custody. Another nine cells were designated for use by inmates who were denied protective custody and awaiting return to the general population. As of the same date, all thirty cells were full. Plaintiff estimates that the number of prisoners being denied protective custody is ninety-five percent.

In December 2014, Plaintiff allegedly received an anonymous letter threatening him with death if he returned to the general population. Plaintiff has since received similar threats. He reported these threats to prison officials. He also filed four separate requests for protective custody between November 24, 2014 and November 6, 2015. (*Id*. at 7). Each request was denied.

This lawsuit challenges the most recent denial of a request for protective placement. On November 6, 2015, Plaintiff submitted a written request for placement in protective custody after he was attacked by an unknown inmate in the North Chow Hall on October 20, 2015.

(*Id*. at 14).  In his written request, Plaintiff identified nine known enemies and also claimed that correctional officers were going to kill him.

Plaintiff appeared before Defendants Cowan, Spiller and an unknown officer ("John Doe #1") on November 16, 2015.  At this hearing, Plaintiff testified that he was attacked by an unknown inmate in the North Chow Hall on October 20, 2015.  He recognized his attacker as a member of the Black Peace Stone gang.  The attack followed his receipt of an anonymous and threatening letter.  (*Id*.).  He asked that his request for protective placement be granted. The request was denied.  In reference to the threatening letter, Defendant Cowan stated that she "was not addressing that issue again."  (*Id*. at 14; Doc. 1-1 at 5).  Defendants Cowan and Doe #1 then voted to deny the request.  (*Id*.).  Defendant Spiller agreed with the decision.  (Doc. 1 at 21). Upon review of the decision, Defendants Butler, McCarty, and Baldwin concurred.  (*Id*. at 15, 21, 23; Doc. 1-1 at 13).  Plaintiff alleges that he was never provided with a written summary of the reasons for this decision and contends that it was based on insufficient evidence under 20 Ill. Admin. Code § 501.320.

Within a few hours of the decision, Plaintiff overheard other inmates say that "he was gonna get what was coming to him."  (*Id*. at 16).  Anxious about his safety, Plaintiff began suffering from chest pain, headaches, nightmares and a loss of appetite.  (*Id*.).  He attempted to commit suicide and went on a hunger strike, all in an attempt "to keep himself safe."  (*Id*. at 7). Plaintiff was placed on suicide watch on December 28, 2015.  (*Id*. at 17).  He went on a 13-day hunger strike two days later and was given intravenous fluids and headache medicine during his hunger strike.  The day after he ended the hunger strike, Plaintiff was placed in the same cell house where his October attack occurred.

Plaintiff now claims that the decision to deny his request for protective placement in November 2015 amounted to a conspiracy by Defendants Butler, McCarty, Baldwin, Cowan, Spiller and Doe #1 to violate his right to be free from cruel and unusual punishment under the Eighth Amendment, to deny him due process and equal protection of the law under the Fourteenth Amendment, and to cause emotional distress under Illinois state law. (*Id*. at 4, 7). He seeks monetary damages, declaratory judgment, and injunctive relief.

## Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to reorganize the claims in the First Amended Complaint into five (5) counts, as set forth below.

> **Count 1:** **Defendants failed to protect Plaintiff from a known risk of harm, in violation of the Eighth Amendment, when they denied his request for protective custody in November 2015.**
>
> **Count 2:** **Defendants deprived Plaintiff of his right to due process of law, in violation of the Fourteenth Amendment, when they denied his request for protective custody without sufficient evidence and without producing a written summary of the reasons for their decision pursuant to 20 Ill. Admin. Code § 501.320.**
>
> **Count 3:** **Defendants violated Plaintiff's right to equal protection of the law, in violation of the Fourteenth Amendment, when they denied him protective custody.**
>
> **Count 4:** **Defendants' decision to deny Plaintiff's request for protective placement in November 2015 resulted in the intentional infliction of emotional distress, in violation of Illinois state law.**
>
> **Count 5:** **Defendants conspired to violate Plaintiff's constitutional rights.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts should not be construed as an opinion regarding their merit.

### Count 1 – Failure to Protect

The Eighth Amendment failure to protect claim (**Count 1**) shall receive further review against Defendants Butler, McCarty, Baldwin, Cowan, Spiller, and Doe #1. The Supreme Court has long held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order to state a failure to protect claim, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff must also prove that prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Under § 1983, a state official may be held liable if he "caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). The official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted). However, a prison official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands

and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a *completed act of misconduct* does not." *George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007) (emphasis added).

In this case, as in his related action, Plaintiff alleges that the denial of his request for protective custody places him in imminent danger of serious physical harm. He alleges that all of all of the defendants are liable for failing to protect him because they have "turned a blind eye" to the substantial risk of serious harm by denying Plaintiff's request for protective placement made after he received threatening letters from anonymous inmates and was actually attacked in October 2015. Given these allegations, the Plaintiff will be allowed to proceed on **Count 1** against Defendants Butler, McCarty, Baldwin, Cowan, Spiller, and Doe #1.

## Count 2 – Denial of Due Process

Plaintiff's Fourteenth Amendment due process claim (**Count 2**) does not survive screening. Plaintiff argues that he was entitled to a written summary of the reasons his request for protective custody was denied under 20 Ill. Admin. Code § 501.320. Section 501.320 concerns the procedures for placement in protective custody and provides that reassignment from the general population to protective custody should be accomplished as quickly as possible, following an inmate's request. § 501.320(a). Within ten working days of his placement in protective custody, the inmate must appear before an Assignment Officer, who makes a recommendation concerning the inmate's need for continued protective custody. § 501.320(b). Section 501.320(b) sets forth factors the Assignment Officer may consider when making his recommendation. *Id*. If the Chief Administrative Officer decides that the inmate should be removed from protective custody, the inmate must then be served with a written copy of the

decision. § 501.320(c). The inmate must remain in protective custody while any grievance of the decision remains pending. § 501.320(d).

This regulation does not create a protected liberty interest in remaining in protected custody. *See Kellas v. Lane*, 923 F.2d 492 (7th Cir. 1990) (holding that Illinois prison regulations governing protective custody "do not create a due process claim of entitlement on the inmates' behalf"). *Id*. at 495. In this context, the regulation does not give rise to a liberty interest that is enforceable under the Constitution. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991). Language in the regulation requiring personal service of a written decision to remove the inmate from protective custody does not change this result. The expectation that certain procedures will be followed before certain action is taken simply does not create a liberty interest protected by the due process clause. *Olim*, 461 U.S. at 250-51; *Smith*, 946 F.2d at 1254; *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir. 1982). Under the circumstances, **Count 2** shall be dismissed without prejudice against the defendants.

### Count 3 – Denial of Equal Protection

The First Amended Complaint supports no Fourteenth Amendment equal protection claim (**Count 3**) against the defendants. Plaintiff does not develop this claim in his First Amended Complaint. He instead relies on conclusory allegations of equal protection violations against the defendants. Courts cannot "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The claim is subject to dismissal on this ground alone.

There are other reasons for dismissing Count 3. The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the

laws." U.S. CONST. amend. XIV, § 1.  The right of equal protection "has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers. The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action."  *Briscoe v. Kusper,* 435 F.2d 1046, 1052 (7th Cir. 1970). *See also Huebschen v. Department of Health & Soc. Servs.,* 716 F.2d 1167, 1171 (7th Cir. 1983) (a person asserting an equal protection violation "must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual"), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).

Thus, to state a claim for an equal protection violation, a prisoner must allege that he or she is a member of a protected class, and that state actors treated members of the prisoner's class less favorably than people not in the class but who are similarly situated.  *See Brown v. Budz,* 398 F.3d 904, 916 (7th Cir. 2005); *Harris v. Greer,* 750 F.2d 617, 618–19 (7th Cir. 1984). A required threshold showing, then, is that a plaintiff was treated differently than others who are similarly situated. *Desris v. City of Kenosha, Wis.,* 687 F.2d 1117, 1119 (7th Cir. 1982).

In the First Amended Complaint, Plaintiff makes no such claim.  He does not allege that he was a member of a protected class.  He does not allege that he was treated differently than other similarly situated inmates.  Instead, Plaintiff's claim is rooted in the unfairness of the decisions to deny him protective custody.  An equal protection claim cannot proceed under this theory.  Accordingly, **Count 3** shall be dismissed without prejudice against the defendants.

### Count 4 – Intentional Infliction of Emotional Distress

Plaintiff's state law claim for intentional infliction of emotional distress (**Count 4**) shall proceed.  Where a district court has original jurisdiction over a civil action, it also has

supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's state tort claim arises out of the same events giving rise to his federal claims. At this juncture, the Court will exercise its supplemental jurisdiction and allow the state law claim for intentional infliction of emotional distress to proceed against the defendants. Accordingly, **Count 4** shall receive further review against Defendants Butler, McCarty, Baldwin, Cowan, Spiller, and Doe #1.

### Count 5 – Conspiracy

The conspiracy claim (**Count 5**) shall be dismissed. Plaintiff seeks to hold the defendants liable for conspiracy to violate his rights under the Eighth and Fourteenth Amendments. However, he offers no factual basis for this claim. In conclusory fashion, he asserts that the defendants conspired against him. A mere conclusory allegation of a conspiracy is not sufficient to support a claim; the claim requires some factual underpinning to survive preliminary review under § 1915A. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

To establish the existence of a conspiracy, "a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an

understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999)).

In the instant case, the fact that Defendants Butler, McCarty, Baldwin, Cowan, Spiller and Doe #1) were involved in denying the November 2015 request for protective custody does not, without more, establish a conspiracy. The First Amended Complaint offers no other allegations suggesting that these defendants shared a common objective of violating Plaintiff's rights under the Eighth and Fourteenth Amendments. The First Amended Complaint also does not suggest that these defendants shared an understanding or agreement in this regard. Absent these allegations, the Court cannot allow this claim to proceed. Therefore, **Count 5** shall be dismissed without prejudice against Defendants Butler, McCarty, Baldwin, Cowan, Spiller, and Doe #1.

### Summary

In summary, Plaintiff shall be allowed to proceed with his failure to protect claim (**Count 1**) and intentional infliction of emotional distress claim (**Count 4**) against Defendants Butler, McCarty, Baldwin, Cowan, Spiller, and Doe #1. His due process claim (**Count 2**), equal protection claim (**Counts 3**) and conspiracy claim (**Count 5**) shall be dismissed against all of the defendants without prejudice. Further, Defendants John Doe ##2-131 shall be dismissed without prejudice because they are mentioned only in connection with the class action and not Plaintiff. Any claim raised in the First Amended Complaint that is not addressed in this Order is considered dismissed without prejudice.

### Identification of Defendant John Doe #1

Plaintiff shall be allowed to proceed with Counts 1 and 4 against Defendant John Doe #1, the unknown internal affairs officer who denied Plaintiff's request for protective custody in

November 2015. However, this individual must be identified with particularity before service of the complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim against the unknown defendants, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those individuals. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying Defendant John Doe #1 will be set by the United States Magistrate Judge, so that Plaintiff can identify this party with particularity. All other defendants shall promptly respond to discovery, formal or otherwise, aimed at identifying Defendant John Doe #1. Once identified, Plaintiff shall file a motion to substitute the unknown internal affairs officer referred to in the complaint with the specific name of that defendant.

## Pending Motions

**1.    Motion for Preliminary Injunction (Doc. 4)**

Plaintiff filed a Motion for Preliminary Injunction (Doc. 4), which shall be referred to United States Magistrate Judge Philip M. Frazier.

**2.    Motion to Amend Complaint (Doc. 7)**

Plaintiff filed a Motion to Amend Complaint (Doc. 7) on February 5, 2016, before the Central District screened the original Complaint (Doc. 1) or transferred the case to this Court for further review. Given the timing of Plaintiff's request to file an amended complaint, it is hereby **GRANTED**. *See* FED. R. CIV. P. 15(a)(1). The original Complaint (Doc. 1) is **VOID**.

## Disposition

The Clerk is **DIRECTED** to re-file Document 7 as the "First Amended Complaint" in CM/ECF.

The Clerk is further **DIRECTED** to **ADD** Defendants **KIMBERLY BUTLER, JEANETTE COWAN, WILLIAM SPILLER**, and **JOHN DOE #1 (internal affairs officer)** as parties to this action in CM/ECF.

**IT IS HEREBY ORDERED** that Defendants **JOHN DOE ##2-131** are **DISMISSED** without prejudice because they are named only in connection with the class action; should Plaintiff file a motion for class certification that is granted, he may seek their reinstatement as parties to this action.

**IT IS FURTHER ORDERED** that **COUNTS 2, 3,** and **5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that as to **COUNTS 1** and **4**, the Clerk of Court shall prepare for Defendants **McCARTY, BALDWIN, BUTLER, COWAN,** and **SPILLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 7), Motion for Preliminary Injunction (Doc. 4), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendant John Doe #1 (unknown internal affairs officer) until such time as Plaintiff files a motion for substitution to identify this individual with specificity in the case caption and throughout the complaint.  Plaintiff is **ADVISED** that it is

Plaintiff's responsibility to provide the Court with the name and service address for this individual.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, including consideration of the Motion for Preliminary Injunction (Doc. 4) and discovery aimed at identifying Defendant John Doe #1 (unknown internal affairs officer).  Any motions or other papers filed after the date of this Order that relate to this request for relief or seek leave to amend the First Amended Complaint are also **REFERRED** to United States Magistrate Judge **Frazier**.   If it becomes apparent that further action is necessary, the undersigned Judge should be notified immediately.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Frazier** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding the fact that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 4, 2016**

                                                                                    **s/ STACI M. YANDLE**
                                                                                    **U.S. District Judge**