IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIE BOOKER, )
)
        Plaintiff, )
)
vs. ) Case No. 16-CV-194-SMY-RJD
)
LESLIE MCCARTY, JOHN R. )
BALDWIN, KIMBERLY BUTLER, )
JEANETTE COWAN, WILLIAM )
SPILLER, and JOHN DOE 1, )
)
        Defendants. )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

    Plaintiff Willie Booker, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Specifically, Booker claims that Defendants, IDOC Director John Baldwin, Administrative Review Board Chairperson Leslie McCarty, Warden Kimberly Butler, Counselor Jeanette Cowan, Internal Affairs Officer William Spiller, and Officer John Doe #1 denied his request for protective custody in November 2015 without sufficient evidence and, as a result, exposed him to harm. Booker is proceeding on the following claims:

        Count One:    Defendants failed to protect Booker from a known risk of harm, in violation of the Eighth Amendment, when they denied his request for protective custody in November 2015.

        Count Four[1]:    Defendants' decision to deny Plaintiff's request for protective placement in November 2015 resulted in the intentional infliction of emotional distress in violation of Illinois state law.

---

[1] Counts Two, Three, and Five were dismissed in the Court's threshold order (Doc. 13).

As an initial matter, Booker was advised that service would not be made on the unknown (John Doe) defendant until he identified him by name in a properly amended complaint (Doc. 13). On June 2, 2016, the Court entered a Scheduling and Discovery Order giving Booker until September 16, 2016 to seek leave to amend his complaint to name unknown parties (*see* Doc. 28). As of the date of this Order, Booker has failed to identify the unknown defendant. As such, Booker has failed to prosecute his case against John Doe #1, and this defendant is **DISMISSED WITH PRJEUDICE** pursuant to Rule 41(b) of the Federal Rules of Civil procedure.

This case is now before the Court on the Motions for Summary Judgment filed by Defendants Baldwin, Butler, Cowan, McCarty, and Spiller (Doc. 114) and Plaintiff Booker (Doc. 118). Booker filed a response to Defendants' Motion (Doc. 120), and Defendants filed a Motion to Strike Booker's Motion for Summary Judgment (Doc. 128).[2] For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

**Factual Background**

Plaintiff Willie Booker was incarcerated at Menard from 2004 to February 2018 (Deposition of Willie Booker, Doc. 115-4 at 4). From November 2014 to November 2015, Booker submitted four requests to be placed in protective custody (*see* Doc. 115-2). Each request was ultimately denied (*see id.*).

Booker's claims in this matter relate to his November 13, 2015 request (*Id.* at 3). In this request, Booker stated that his life was in danger (*Id.*). He explained that on October 20, 2015, he was attacked by an inmate he did not know, after having received a letter in December 2014 that he would be killed if he came out of protective custody (*Id.*; Doc. 115-4 at 7). Booker

---

[2] Although the Court recognizes the procedural flaws in Plaintiff's Motion for Summary Judgment, it is not inclined to strike the same, and will instead decide the Motion on the merits. Accordingly, Defendants' Motion to Strike is **DENIED**.

claimed that the "GDs" (Gangster Disciples) had a hit out on him because he refused to do their legal work (Doc. 115-2 at 3). He identified nine individuals as his enemies, and indicated that the Gangster Disciple organization, Black Peace Stone organization, and correctional officers wanted to kill him (*Id.*).

In response to his request for protective custody, Booker was interviewed by Counselor Cowan and Internal Affairs ("IA") Officer Spiller on November 17, 2015 (Doc. 115-4 at 12; *see* Doc. 115-2 at 2). During these interviews, Booker explained that he needed protective custody because he had been labeled a snitch and had severed ties with the GDs (Doc. 115-4 at 13). He also explained that he was attacked in October 2015 by an unknown inmate (*Id.* at 12). He told them he had received a letter in December 2014 threatening that if he "brought [his] sex offender ass out of PC, [he] would be killed" (*Id.*)[3].

Cowan asked for the letter, but Booker had previously turned it in to another officer (*Id.*). She told Booker that she was not going to address the letter again (*Id.*). Cowan recommended that Booker's request for protective custody be denied (Doc. 115-2 at 2). She confirmed that Booker had been in a fight with another inmate, but indicated that the other inmate had a disciplinary history and there was no indication that it was related to security threat group ("STG") activity (*Id.*). Cowan noted that in her interview with Booker, he was not able to provide any reasoning or verification as to why the offenders he listed on his request for protective custody were a threat to his safety (Doc. 115-3 at 2; Doc. 115-2 at 2). Cowan ultimately determined that Booker was attempting to manipulate the system in order to receive a transfer out of Menard or specific housing, as he indicated he would withdraw his request for protective custody if he was allowed to pick his cell location (*Id.*).

Spiller also recommended that Booker's request for protective custody be denied (Doc.

---

[3] Since receiving this letter, Booker had checked into, and been removed from, protective custody on at least two occasions, resulting in his incarceration in general population.

115-2 at 2). In his written recommendation, he also indicated that Booker was attempting to manipulate the cell placement system because he was willing to sign out of protective custody if he could pick his cell location (*Id.*). Spiller noted that Booker was unable to identify anyone that had threatened him or any motivation for a threat (*Id.*).

Warden Kimberly Butler ultimately denied Booker's request for placement in protective custody (Doc. 115-4 at 13; Doc. 115-2 at 2). Booker appealed this decision to the Administrative Review Board ("ARB") (Doc. 115-4 at 14). On December 10, 2015, Leslie McCarty, Chairperson for the ARB, held a hearing on Booker's appeal (*Id.*; Doc. 115-2 at 1). At the hearing, Booker explained that he needed protective custody because he believed he was attacked in October 2015 because he is a sex offender (Doc. 115-4 at 14). Booker told McCarty he had received a letter in December 2014 that stated he would be killed if he came out of protective custody (*Id.*). Booker also told McCarty about refusing to do the GD's legal work and explained that they labeled him a snitch (*Id.*). McCarty recommended that Booker's appeal of the protective custody decision be denied (Doc. 115-2 at 1). In her written recommendation, she found Booker had not provided sufficient verifiable information to warrant his retention in protective custody and noted that the fight in October 2015 was an isolated incident and not STG affiliated (*Id.*). She contacted Internal Affairs and confirmed that the letter referenced by Booker was one that had already been produced, considered, and denied by the ARB in a decision on a previous protective custody request (*Id.*).

IDOC Director John Baldwin's designee, Terri Anderson, concurred with McCarty's recommendation and denied Booker's appeal of his protective custody request (Doc. 115-4 at 14; Doc. 115-12 at 2). Baldwin deligated his authority to respond to these appeals and, therefore, never reviewed the same (*Id.*). During his deposition, Booker indicated that he intended to dismiss Baldwin from his Complaint after discovery of this information (Doc. 115-4 at 14).

After the denial of his protective custody request by the ARB, Booker was placed back in general population in the North 2 cell house on or about December 18, 2015 (*Id.* at 15). Soon after, he heard other inmates in the lower level threatening that he was "going to get what [he] had coming to [him]" (*Id.*). About a week later, Booker was placed on suicide watch because he was tired of the threats and he was scared (*Id.* at 16). He also went on a hunger strike around this time to avoid other inmates (*Id.*). Booker was again placed in general population in mid-January 2016 in the north uppers (*Id.* at 17). He went on a hunger strike again in October 2016 after being threatened by his cellmate (Doc. 118-7 at 79).

In February 2017, while housed in the south uppers, Booker was attacked by his cellmate, a gang chief for the Four Corner Hustlers, while he was in general population after he refused to perform a sexual act (Doc. 115-4 at 17). He was also forced to eat excrement in May or June 2017 by another cellmate who was a member of the Black Disciples (*Id.* at 18). Booker filed a notice of change of address from Menard to Stateville Correctional Center on February 14, 2018, where he remains incarcerated (*see* Doc. 100).

## **Discussion**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## COUNT ONE

Booker alleges Defendants violated the Eighth Amendment when they denied his request for protective custody in November 2015, thereby placing him at risk of harm. Although the Constitution "does not mandate comfortable prisons," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), it does not permit inhumane ones. *Farmer*, 511 U.S. at 832. The Eighth Amendment imposes duties on prison officials who must provide humane conditions of confinement and must "take reasonable measures to guarantee the safety of inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

In order to succeed on a Section 1983 claim against prison officials for failure to protect, a plaintiff must establish: (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that the defendants acted with "deliberate indifference" to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834)). To satisfy the first prong, a plaintiff must show that he not only experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that the serious harm might actually occur. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Ultimately, the question is whether the plaintiff was exposed to a sufficiently substantial risk of serious damage to his future health." *Id.*

Here, Booker feared for his safety after his request for protective custody was denied, but there is insufficient evidence that such denial exposed him to a substantial risk of serious harm. In fact, the evidence before the Court is that Booker requested protective custody placement in

November 2015 and, in his request, submitted a list of nine enemies. Booker also indicated that the Gangster Disciple organization, Black Peace Stone organization, and correctional officers wanted to kill him. He was interviewed by Cowan and Spiller, who determined there was no basis for or verification of Booker's claims. Instead, they determined Booker was attempting to manipulate his cell placement.

Booker has failed to produce any evidence from which a jury could reasonably conclude that any of the individuals or organizations mentioned in his request posed a risk of harm to him at the time of his request. Indeed, Booker does not allege that he was injured until February 2017, more than one year after he submitted his request. Significantly, that assault was not carried out by any of the enemies or organizations identified in his protective custody request. There is no evidence Defendants knew of this risk, or the risk related to the May or June 2017 incident, in 2015.

Because there is no evidence that the denial of the November 13, 2015 protective custody request exposed Booker to a substantial risk of serious harm, Defendants could not have been deliberately indifferent to the same. Therefore, Defendants are entitled to summary judgment on Booker's Eighth Amendment claim. For the same reasons, Booker's motion for summary judgment as to Count One is denied[4].

## COUNT TWO

Booker also claims that Defendants' denial of his November 2015 protective custody request subjected him to the intentional infliction of emotional distress, in violation of state law. Under Illinois law, a plaintiff must establish the following elements to succeed on an intentional infliction of emotional distress claim: (1) that the defendants' conduct was extreme and outrageous; (2) that Defendants intended their conduct to inflict severe emotional distress or

---

[4] The Court need not consider Defendants' qualified immunity defense as it finds that Defendants did not violate Booker's constitutional rights.

knew there was at least a high probability their conduct would inflict such distress; and (3) that their conduct actually caused severe or extreme emotional distress. *Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006). Extreme and outrageous conduct is that which goes "beyond all bounds of decency and [is] considered intolerable in a civilized community." *Id.* (citations omitted).

The Court has concluded that Defendants did not violate the Eighth Amendment in denying Booker's protective custody request. Booker's failure to establish sufficient evidence to proceed on his § 1983 claim necessarily precludes him from making an adequate showing of extreme and outrageous conduct or that any individual defendant intentionally or recklessly caused severe emotional distress as a matter of law. Defendants are therefore entitled to summary judgment on Count Two, and Booker's motion for summary judgment as to this Count is denied.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by John Baldwin, Kimberly Butler, Jeanette Cowan, Leslie McCarty, and William Spiller (Doc. 114) is **GRANTED**. Plaintiff Willie Booker's Motion for Summary Judgment (Doc. 118) is **DENIED**, and the Motion to Strike filed by John Baldwin, Kimberly Butler, Jeanette Cowan, Leslie McCarty, and William Spiller (Doc. 128) is **DENIED**. John Doe #1 is **DISMISSED WITH PREJUDICE**. The Clerk of Court **SHALL ENTER JUDGMENT** against Plaintiff Willie Booker and in favor of Leslie McCarty, John Baldwin, Kimberly Butler, Jeanette Cowan, and William Spiller and close this case.

**IT IS SO ORDERED.**

**DATED: July 13, 2018**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**